IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No: |
| | ) | |
| v. | ) | |
| | ) | |
| LOKESH NAIK | ) | **FILED UNDER SEAL** |

**GOVERNMENT'S MOTION FOR ISSUANCE OF
AN ARREST WARRANT, DETENTION OF THE DEFENDANT
AND REMOVAL OF THE DEFENDANT TO THE UNITED STATES**

The United States, through undersigned counsel, respectfully moves this Court to order the arrest, detention and removal of the defendant, Lokesh Naik, pursuant to 18 U.S.C. § 3142 (Detention Pending Judicial Proceedings) and 18 U.S.C. § 3265 (Military Extraterritorial Jurisdiction Act (MEJA) - Removal). The defendant is charged by Indictment returned by the Grand Jury on November 6, 2019 charging the defendant with two counts of Aggravated Sexual Abuse by force, in violation of 18 U.S.C. § 2241(a), and one count of Abusive Sexual Contact by force, in violation of 18 U.S.C. §2244(a)(1). Accordingly, the United States moves this Court to issue the attached arrest warrant for the defendant.

The defendant is an Indian national and not a citizen of the United States or lawfully admitted for permanent residence as defined in 8 U.S.C. §1101(a)(2), with no ties to the United States who therefore poses a significant flight risk. In addition, the charged offenses are statutorily defined crimes of violence pursuant to 18 U.S.C. § 3156(a)(4)(A), as they each involve an element of the use of physical force, and the United States therefore also seeks detention of the defendant pursuant to 18 U.S.C. § 3142(f)(1)(A).

Considering the nature of the violent offenses, the considerable weight of the evidence against the defendant, and the fact that the defendant has no ties or connection to any community in the United States, there is no condition or combination of conditions this Court could impose that would reasonably assure the defendant's appearance as required under 18 U.S.C. §3142(e).

Further, the immediate removal of the defendant from Afghanistan to the United States would assure the appearance of the defendant and is appropriate pursuant to 18 U.S.C. § 3264(b)(4), as the defendant poses a flight risk from Afghanistan and a federal judge has discretion to remove an individual to the United States for any reason, if the individual is subject to MEJA jurisdiction.

**I.  Procedural History**

The defendant was indicted by a federal grand jury on November 6, 2019, on two counts of Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a), and one count of Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(a)(1). The offenses occurred in the Islamic Republic of Afghanistan and on United States military Operating Base (OB) Fenty on or about August 7, 2019.

Jurisdiction over the offenses exists pursuant to MEJA, 18 U.S.C. §§ 3261-3267, which subjects certain individuals to prosecution in federal district court for felonies committed outside the United States, if the offenses would have been subject to federal prosecution within the special maritime and territorial jurisdiction of the United States and the offense is punishable by imprisonment for more than one year. The categories of individuals who can be subject to U.S. federal prosecution pursuant to MEJA include, *inter alia*, individuals who are "employed by or accompanying the Armed Forces outside the United States." 18 U.S.C. § 3261. As alleged in the Indictment, Naik was employed by and accompanying the Armed Forces in Afghanistan at the time of the offense.

Venue for the offense exists in the District of Columbia pursuant to 18 U.S.C. § 3238, because the conduct alleged in the Indictment occurred outside the jurisdiction of any particular State or District, the defendant has no last known residence in any district, and the Indictment is filed in the District of Columbia.

The United States requests that an arrest warrant be issued for the defendant based on the pending Indictment. Upon issuance of the arrest warrant, the defendant will be arrested by military authorities in Afghanistan at OB Fenty, where he is currently located, and brought to Bagram Air Base for proceedings in this matter. Military personnel in Afghanistan has arranged for counsel to represent the defendant in Afghanistan for purposes of this hearing. Accordingly, the United States requests that an initial appearance for the defendant be scheduled before United States Magistrate Judge G. Michael Harvey on November 8, 2019. The United States requests that the initial appearance be conducted telephonically or video teleconference (if available) with Bagram Air Base pursuant to 18 U.S.C. § 3265(a)(1)(B).

## II.     Factual Background

The charges in this case arise from evidence obtained during an investigation of a sexual assault of a U.S. contractor (hereinafter referred to as "S.C.") at OB Fenty. The assault occurred on or about August 7, 2019, at OB Fenty where the victim and the defendant lived and worked at the time as employees of a U.S. military contractor. Among other things, the investigation involved the interview of numerous individuals, including the victim and defendant, and collection of physical evidence. The following information is a portion of the evidence uncovered during the course of the investigation.

### A.     Information Obtained by the Army Criminal Investigation Division

OB Fenty is a U.S. military base in Afghanistan. AC First, LLC, ("AC First") is a U.S. company contracted to provide services to the U.S. military in Afghanistan and has employees stationed at OB Fenty. The defendant, Lokesh Naik (herein "NAIK"), is an Indian citizen and his home of record is Karwar, Karnataka, India. Since at least March 23, 2017, NAIK has been employed by Global Sourcing Solutions, a sub-contractor of AC First. On June 28, 2019, NAIK entered into a year-long employment agreement with Global Sourcing Solutions as a maintenance operations specialist. The contract under which NAIK is employed is a U.S. Department of Defense contract with Army Contracting Command, United States Army. S.C. has been employed by AC First in Afghanistan for only a few months, and recently transferred to OB Fenty approximately a month before the incident.

### B.     Information Provided by S.C.

S.C. advised Army Criminal Investigation Division (CID) investigators that on the night of August 7, 2019, she had been hanging out and talking with the defendant after work. Sometime during the night of August 7, 2019, after S.C. had left, gone to her room, and gone to sleep, NAIK entered her room at OB Fenty and sexually assaulted her by forcibly kissing S.C., placing his mouth on her vulva, and penetrating S.C.'s vagina with his penis. At the time of the assault, S.C. worked as a communications specialist for AC First and had been at OB Fenty for approximately one month. S.C.'s regular work hours were from approximately 7:00 am to 7:30 pm, seven days a week. S.C. stated that her office, one of her work locations, was located next to NAIK's office, and the two began talking with each other and socializing during and after work for approximately one week before the assault. According to S.C. and witnesses, S.C. and NAIK's relationship was not romantic.

According to S.C., in the week leading up to the assault, NAIK took an increasing interest in speaking to her, asking her about her life and making sure that S.C was adjusting to her new assignment on OB Fenty. On the night of the assault, August 7, 2019, S.C. and NAIK planned to socialize at the "smoke pit" instead of going to the gym after work. The "smoke pit" is a shelter with a picnic table that is used by employees as a designated smoking area and that serves as a gathering place for AC First employees at OB Fenty while they are off duty. S.C. and NAIK met at the "smoke pit" around 9:00pm. While there, they shared a small water bottle partially filled with a brown liquor. According to S.C., she drank a small amount of the liquor and did not get drunk from it. At some point, both S.C. and NAIK decided to move from the "smoke pit" to the ESD Room, which is an enclosed shelter that has a door with a padlock and is located nearby the "smoke pit." S.C. is one of only three employees with access to the ESD Room because it is one of her work stations. After retrieving the key from the main office, S.C. unlocked the ESD Room and she and NAIK sat in chairs inside and continued their conversation. The door to the ESD Room remain unlocked while they were inside since it could be locked with a padlock only from the outside. During the conversation, NAIK began discussing his wife back in India. At some point, NAIK stated that he regretted marrying at a young age and desired to be married to S.C. Feeling uncomfortable at that point, S.C. ended the conversation and indicated she was going to bed. She and NAIK left the ESD Room, which S.C. closed and secured with the padlock.

After S.C. locked the ESD Room, she walked back to her room a short distance away. NAIK walked briefly in the same direction, but broke off from S.C., she believed, to return to his own quarters in a different building than hers. S.C. did not, however, observe whether NAIK actually returned to his quarters. S.C. arrived at the building in which her room was located. S.C.'s room was one of several single-person living quarters in a two-story building at OB Fenty. The

building was accessed by an exterior door with a cipher lock[1] that opens to a central hallway, with each room accessible through a door from the interior hallway. Thus, to access S.C.'s room, a person would need to enter through the exterior cipher lock door and then walk down the hallway and open S.C.'s room door. However, according to S.C., the exterior cipher lock door on her building at times was disengaged because the door did not latch completely closed. S.C. cannot recall whether, when she returned to her room on the night of the assault, the door was properly latched, requiring entry of the password, or if it was improperly latched, allowing a person to simply pull the door open.

Upon entering her room, S.C got in bed fully dressed and went to sleep. S.C. recalls that she was clad in a sports bra and t-shirt, track pants, and socks. She fell asleep underneath her covers with them pulled up to her waist. S.C. remembers waking up a short while later and seeing NAIK inside her room. NAIK got on top of her on her bed and began kissing her on her face, mouth and neck. S.C. asked what NAIK was doing and told him to stop. S.C. struggled against NAIK, using her hands to try to push him off of her and attempting to slide backwards on the bed to get away from him. However, S.C. could not move backward further as she was up against the wall. NAIK did not stop, but continued to try to remove S.C.'s clothing by pulling down her track pants. S.C. struggled against NAIK, using her hands to try to pull her pants up while NAIK attempted to remove them. Upon removing S.C.'s pants and underwear, NAIK pinned S.C.'s leg against the wall. He continued to forcibly kiss S.C.'s face, neck, and breasts. At some point, NAIK performed cunnilingus on S.C.'s vagina and penetrated S.C.'s vagina with his penis. NAIK

---

[1] A cipher lock is a five-number combination lock that opens only upon entering a pre-set number combination by pressing on the corresponding buttons.

also forced S.C. to grope his penis by grabbing S.C.'s hand and placing and holding it on his penis. Through the course of the sexual assault, S.C. physically resisted and verbally told Naik that she did not want to engage in sexual acts. S.C. stated that, at some point during NAIK's penetration of her vagina, once she was pinned to the bed and the wall, she "gave up" resisting.

### C. Information Provided by Witnesses

Immediately after the sexual assault, S.C. texted and called a friend and mentor, WITNESS 1, who resided in Jacksonville, Florida. S.C. reported to WITNESS 1 that she had been raped by NAIK and asked what to do. WITNESS 1 stated that S.C. was distraught, though coherent, and did not exhibit signs of being intoxicated. A review of the text messages between S.C. and WITNESS 1 on WITNESS 1's cellular, which were forensically extracted by a computer forensic examiner upon consent of WITNESS 1, reflect the following messaging exchange, beginning at 15:24 EST on August 7, 2019:

S.C.: What I do if I got raped

S.C.: All jokes aside

S.C.: Non mil[2]

WITNESS 1: What! Don't shower report to the TMC OR medical center. Are you ok?

S.C.: I'm dead ass serious

WITNESS 1: Who!!! And where did this happen

S.C.: My room

WITNESS 1: He know where I lived

WITNESS 1: I'm serious go to the medical center? Is this that guy friend?

WITNESS 1: Was there any penetration?

---

[2] This reference means that the assailant was not a member of the military.

7

S.C.: Yes

WITNESS 1: Yes to what that guy friend or penetration

S.C.: Both

According to WITNESS 1, S.C. then called WITNESS 1 and reported that she (S.C.) had just been raped. S.C. stated to WITNESS 1 that the man who raped her was the same man S.C. had previously told WITNESS 1 about and with whom S.C. was talking and socializing with over the past week. S.C. told WITNESS 1 that, after talking with NAIK at the smoke pit, she left to go to bed because the conversation became awkward. WITNESS 1 reported that S.C. told her that the conversation was awkward because NAIK told S.C. he wanted to be married to her. WITNESS 1 reported that S.C. informed her that she went to her room after breaking off from NAIK, and that she went to bed fully dressed other than her shoes. S.C. told WITNESS 1 that she was sleeping, but was awakened to NAIK entering the room and getting on top of her in bed. S.C. told WITNESS 1 that NAIK penetrated her vagina with his penis and asked WITNESS 1 what she should do next. According to WITNESS 1, WITNESS 1 advised S.C. to report what happened to a supervisor and obtain medical care at a treatment facility.

According to S.C., after calling WITNESS 1 to report the sexual assault, she knocked on a female co-worker's door, two rooms down the hall from S.C., to report the assault and seek assistance. The co-worker, WITNESS 2, answered the door and found S.C. to be upset. S.C. reported to WITNESS 2 that NAIK had sexually assaulted her. According to both S.C. and WITNESS 2, they decided to report the sexual assault to WITNESS 3, the AC First Supervisor. S.C. and WITNESS 2 went to WITNESS 3's room, knocked on the door, and, S.C. disclosed to

WITNESS 3 that she had been sexually assaulted by NAIK earlier that night. WITNESS 3 transported S.C. and WITNESS 2 to the medical facility at OB Fenty for S.C. to receive treatment as a sexual assault victim. Although medical personnel arrived to treat S.C., the medical facility at OB Fenty is not equipped to conduct a sexual assault forensic examination (SAFE). Consequently, according to WITNESS 3, helicopter transportation was arranged for S.C. to travel to Bagram Air Field early in the morning on August 8, 2019. S.C. then underwent a forensic physical examination of S.C. and collected DNA evidence.

### D. Admissions Made by NAIK

On August 8 and 14, 2019 and again in October, 2019, CID agents in Afghanistan interviewed NAIK. After he waived his rights on all three occasions, NAIK gave three video recorded statements at OB Fenty. According to NAIK, he and S.C. socialized at the "smoke pit" and the communications room on the night of August 7th. Further, NAIK stated that his and S.C.'s work offices were located next to each other and during the week before the sex assault, the two had begun to socialize during and after work. NAIK admitted that he had sex with S.C. on the night of August 7, but denied that it was non-consensual. According to NAIK, he entered S.C.'s room at her invitation to "cuddle." He proceeded to sit on her bed and thought they would simply continue talking, but S.C. began to rub his chest, he became aroused, and they had sexual intercourse. According to NAIK, S.C. forced him to perform cunnilingus on her, S.C. voluntarily grabbed his penis, and she initiated vaginal penetration.

According to WITNESS 3, the following morning, on August 8, 2019, before anyone else at OB Fenty knew about the assault, NAIK reported to WITNESS 3 that he (NAIK) "did something bad." When WITNESS 3 inquired as to what NAIK had done, NAIK stated that he and S.C. had sexual intercourse the previous night. According to NAIK, he decided to report he had sex with S.C. when he attended the daily AC First employee meeting that morning and realized that S.C. was not present. At that point, NAIK claimed that he felt he needed to report being in S.C.'s room and having sex with her because it was against the rules.

In a subsequent interview in October, 2019, NAIK admitted that underwear recovered by crime scene investigators at FOB Fenty from S.C.'s room belonged to him and that he could not explain why they were located there.

### E.   Evidence collected

CID collected DNA evidence from S.C. as part of her forensic evaluation. CID also collected a pair of men's underwear from the floor of S.C.'s room, as well as a watch and two gold rings from the bedside stand that S.C. identified as belonging to NAIK. S.C. stated that she does not know how the watch and rings ended up in her room. According to NAIK, he removed his watch and rings so he would not scratch S.C. while they "cuddled." CID also collected buccal swabs from NAIK with his consent for purposes of DNA testing. Forensic analysis of the evidence was conducted. The defendant's DNA was present on a breast swab taken from S.C. as part of the SAFE examination, and semen was present on her pubic mound, though no DNA was present in that semen.

**III.    Detention**

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person…and the safety of any other person and the community." 18 U.S.C. § 3142(e). The United States requests detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because the charged crimes are crimes of violence pursuant to 18 U.S.C. § 3156(a)(4)(A); § 3142(f)(1)(B), as the charged offense carries a maximum sentence of life imprisonment; and pursuant to § 3142(f)(2)(A) because the defendant is a serious flight risk. The Government is permitted to proceed by proffer to establish facts relevant to the detention determination.  See United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (joining other circuits and finding both the government and the defendant may proceed in a detention hearing by proffer or hearsay).

The factors listed in § 3142(g) to determine whether the defendant poses a danger to the community or flight risk include: (1) the nature and circumstances of the offenses charged, including whether the offenses are a "crime of violence,"; (2) the weight of the evidence against the person; and (3) the history and characteristics of the person, including his community ties, employment, financial resources, and length of residence in the community.

The charges in this case, two counts of Aggravated Sexual Abuse by force, § 2241(a), and one count of Abusive Sexual Contact, § 2244(a)(1), each qualify as a "crime of violence" as described in § 3142(g)(1). See § 3156(a)(4)(A) ("crime of violence" means an offense that has as an element the use or attempted use of force); United States v. Singleton, 182 F.3d 7, 11 (D.C. Cir. 1999) (concluding that § 3156 looks only to the elements of the offense); §3156(a)(4)(C) (crime of violence is any offense in Chapter 109A). Additionally, the nature and circumstances of the

offense show a brazen and forceful act of violence against another person and weighs heavily in favor of detention.

The weight of the evidence against the defendant is significant, and under § 3142(g)(2) strongly supports detention. The victim reported to three people immediately after NAIK sexually assaulted her. She sought medical assistance and a forensic medical exam. NAIK's admitted admission they had sex was apparently prompted only upon seeing S.C. absent from the next morning's meeting, and his stated reason for disclosing it to his supervisor was purportedly because it was against the rules that he and the victim had sex. However, NAIK did not initially admit he had a phone, which was also against the rules. Moreover, his admissions to CID essentially corroborate and mirror S.C.'s account of all of the events and sequence of sex acts, with the exception of whether they were consensual.

The defendant's history and characteristics under § 3142(g)(3) also favor detention. The defendant is an Indian national with absolutely no ties to any person in the United States. He would be present in the U.S. only to face the charges in this case. His family and wife are in India. He has no employment or residence in the United States and is not authorized to work.

Considering the above factors, including the nature of the offenses, the weight of the evidence, and the defendant's characteristics, there are no conditions or set of conditions that could assure his appearance in court and he presents a significant flight risk.

**IV.    Removal to the United States**

A person charged pursuant to MEJA and arrested in a foreign jurisdiction may be ordered to be removed to the United States in the following circumstances:

1. a Federal magistrate judge orders the person to be removed to the United States to be present at a detention hearing;

2. a Federal magistrate judge orders the detention of the person before trial pursuant to section 3142(e), in which case the person shall be promptly removed to the United States for purposes of such detention;

3. the person is entitled to, and does not waive, a preliminary examination under the Federal Rules of Criminal Procedures, in which case the person shall be removed to the United States in time for such examination; and

4. a Federal magistrate judge otherwise orders the person to be removed to the United States.

18 U.S.C. § 3264(b).

In this instance, the Government is seeking removal of the defendant to the United States because: (1) the Court orders the defendant detained before trial pursuant to section 3142(e), and (2) the Court otherwise orders the defendant to be removed to the United States.  18 U.S.C. § 3264(b)(2) and (4).

**III.    Excludable Delay**

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may occur as a result of this motion or of an order based thereon.

IV. **Conclusion**

For all of the foregoing reasons, the Government respectfully requests the Court issue a warrant for defendant's arrest, enter an order to detain the defendant without bond pending trial, and remove the defendant to the District of Columbia.

Respectfully submitted this 7th day of November, 2019.

JESSIE K. KIU
United States Attorney

 */s// Andrea Hertzfeld*
ANDREA HERTZFELD
United States Attorney's Office
District of Columbia
Assistant United States Attorney
555 4th St NW
Washington, DC 20530
Tel: (202) 252-7808
andrea.hertzfeld@usdoj.gov

BRIAN A. BENCZKOWSKI
Assistant Attorney General

 */s// Jay A. Bauer*
JAY A. BAUER
Human Rights and Special Prosecutions Section
Criminal Division
Trial Attorney
1301 New York Ave. N.W.
Washington, D.C. 20530
(202) 305-1216
Jay.Bauer@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the Government's Motion for Detention and Removal to the United States upon defense counsel, Michelle Peterson, and by email to a Senior Defense Counsel, United States Army, and by filing it with the Court's Electronic Case Filing System:

s/*Jay Bauer*
JAY BAUER
Trial Attorney